IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADRIANNA CUNNING, | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | NO. 20-836 |
| v. | : | |
| | : | |
| WEST CHESTER UNIVERSITY, | : | |
| *Defendant*. | : | |

<u>MEMORANDUM</u>

**JONES, II   J.**                                                                 February 25, 2021

Plaintiff filed this lawsuit against her former college, West Chester University ("Defendant" or "West Chester"), alleging various negligence claims and violations of Title IX of the Education Amendments of 1972 ("Title IX") (20 U.S.C. § 1681 *et seq.*). Plaintiff's claims all stem from her allegation that she was sexually assaulted on campus by a graduate student assistant, Kendrick Bowman, on May 29, 2019. Defendant filed a Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF No. 11), to which Plaintiff filed a Response in Opposition (ECF No. 13). Defendant requested leave to file a Reply Brief in Further Support of its Motion to Dismiss (ECF No. 14), which Plaintiff has also opposed (ECF No. 15). It is to the foregoing submissions of the Parties that the Court now turns.

**I.   FACTUAL BACKGROUND**

The following facts are taken from Plaintiff's Second Amended Complaint ("SAC"), and will be accepted as true for purposes of resolving Defendant's Motion. Plaintiff "enrolled as a student at [West Chester] University and began her freshman year in the fall of 2016." (SAC at ¶ 10.) "In or about September of 2018, [Plaintiff] met [] Kendrick Bowman, who was employed at

the time as a graduate assistant by the University in the Music Department's percussion program." (SAC at ¶ 11.) At around that time, Plaintiff and "Bowman began a sexual relationship," and "Bowman, who was twenty-two years old, provided [Plaintiff], who at the time was only twenty-years-old [sic], with alcohol prior to the two engaging in sexual intercourse on multiple occasions during the course of their relationship." (SAC at ¶¶ 13, 15.)

Plaintiff alleges that Bowman sexually assaulted her on May 29, 2019 in West Chester's music building, when he physically forced her into performing oral sex against her protestations. (SAC at ¶¶ 27–57.) Plaintiff reported the assault to the West Chester University Police, who "proposed conducting a consensual interception of a sting conversation between [Plaintiff] and Bowman." (SAC at ¶¶ 79, 86–89.) "On the recorded call, Bowman acknowledged that he knew [Plaintiff] had not given consent to perform oral sex," and a detective recording the call told Plaintiff "she had done well, and [that] the intercept constituted a complete admission." (SAC at ¶¶ 93, 96.)

When Plaintiff returned to West Chester for the fall semester in August 2019, "the University's Title IX director[] told [Plaintiff] the University would take no additional steps to investigate or prosecute her claims so long as Bowman was being investigated by police, and advised [Plaintiff] to drop her criminal claims," which she did. (SAC at ¶¶ 101–02.) Accordingly, Defendant then conducted its own investigation, culminating in an investigative report that was completed sometime around November 21, 2019. (SAC at ¶¶ 104–16.) "When she reviewed the report, [Plaintiff] discovered that, in spite of his multiple admissions, the University had concluded that [Bowman] had not acted inappropriately and would not take any further action in the matter." (SAC at ¶ 117.) Plaintiff then "voluntarily left West Chester University and transferred to Rosemont College." (SAC at ¶ 192.) After her transfer, the Office

of Student Conduct sent Plaintiff a letter on January 6, 2020 stating that it had received information alleging that Plaintiff had "'filed a false report against the respondent with the purpose of harming him and his reputation,'" and demanding that she "appear for a hearing on charges of Dishonesty, which is a violation of the University's Student Code of Conduct." (SAC at ¶¶ 193–94.)

## II. LEGAL STANDARDS

When ruling on a Rule 12(b)(6) motion, courts must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "To prevent dismissal, all civil complaints must [] set out sufficient factual matter to show that the claim is facially plausible." *Fowler*, 578 F.3d at 210 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* It is the "defendant [who] bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted." *McDonough v. State Farm Fire & Cas. Co.*, 365 F. Supp. 3d 552, 557 (E.D. Pa. 2019) (citing *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005)).

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to challenge a court's subject matter jurisdiction over a claim. "A claim of sovereign immunity, including under the Eleventh Amendment, calls into question the Court's subject matter jurisdiction and arises under Rule 12(b)(1)." *Wilson v. Wolf*, Civ. A. No. 20-4560, 2021 WL 268642, at *2 (E.D. Pa. Jan. 27, 2021) (citing *Gary v. Pa. Human Relations Comm'n*, 497 F. App'x 223, 226 (3d Cir. 2012)). "When considering a facial attack on [a] complaint under Rule 12(b)(1)," the court "must accept the complaint's allegations as true." *Worth & Co., Inc. v. Getzie*, 11 F. Supp. 3d 484, 487 (E.D. Pa. 2014) (internal quotation marks omitted). "As in a Rule 12(b)(6) setting, the court should draw all reasonable inferences in the plaintiff's favor." *Id.* at 487–88.

### III.  DISCUSSION

#### A. Plaintiff's Negligence Claims

Plaintiff has alleged four state law, negligence-based claims against Defendant. *See* SAC at Counts I–IV. Defendant is a public university and part of the Pennsylvania State System of Higher Education, and as Plaintiff acknowledges, "the Commonwealth itself and its officials and employees acting within the scope of their duties enjoy sovereign immunity." Pl.'s Resp. at 26 (citing 1 Pa.C.S.A. § 2310). However, Plaintiff argues that her claims fit within the newest statutory exception to sovereign immunity, for claims alleging sexual abuse. That exception is articulated, in pertinent part, as follows:

> The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
> . . .
>
> (10) Sexual abuse. – Conduct which constitutes an offense enumerated under section 5551(7) (relating to no limitation applicable) if the injuries to the plaintiff were caused by actions or omissions of the Commonwealth party which constitute negligence.

42 Pa.C.S.A. § 8522(b)(10).  Plaintiff argues that, "because 42 Pa.C.S. § 5551(7) enumerates both sexual assault and rape," § 8522(b)(10)'s sovereign immunity exception applies to her negligence claims here.  Pl.'s Resp. at 27.

But by its clear terms, § 5551(7) applies only to instances in which the "victim [of one of the listed offenses] was under 18 years of age at the time of the offense," and Plaintiff acknowledges that she was already twenty years old when her relationship with Kendrick Bowman began.  42 Pa.C.S.A. § 5551(7); *see also* SAC at ¶ 15; *Doe by Brown v. Harrisburg Sch. Dist.*, Civ. A. No. 1:19-cv-1027, 2020 WL 4584372, at *5 (M.D. Pa. Aug. 10, 2020) ("The intended purpose of this amendment to the [Pennsylvania Political Subdivision Tort Claims Act] was to 'waive sovereign immunity for public entities guilty of covering up childhood sexual abuse.'") (discussing statute governing immunity as applied to local agencies, and quoting PA. H.R. LEGIS. JOURNAL, 203rd Assy., Reg. Sess., at 510 (Apr. 10, 2019)).  Notably, the article discussing the recent amendment to the sovereign immunity statute appended to Plaintiff's own brief explicitly identifies this age limitation within the statute.  *See* Pl.'s Resp. at Ex. C ("Local agencies in Pennsylvania are now exposed to liability under a state-law theory that the conduct of their employees or officials has caused a person **under the age of 18 years** to become a victim of a sexual crime.") (emphasis added).  Accordingly, it is unclear to the Court how the exception to sovereign immunity set forth in § 8522(b)(10) could possibly apply to Plaintiff's negligence claims, and why neither party addressed, nor even mentioned, § 5551(7)'s age qualifier in their respective submissions to the Court.

In any event, as it appears that sovereign immunity precludes Plaintiff's negligence claims under state law, Counts I, II, III, and IV of Plaintiff's Second Amended Complaint will be dismissed with prejudice for lack of subject matter jurisdiction.  *See Gary v. Pa. Human*

*Relations Comm'n*, 497 F. App'x 223, 227 (3d Cir. 2012) (finding defendants entitled to sovereign immunity from plaintiff's state law claims and affirming dismissal pursuant to district court's resulting lack of subject matter jurisdiction over claims); *Worth & Co., Inc. v. Getzie*, 11 F. Supp. 3d 484, 495 n.7 (E.D. Pa. 2014) (same).

### B.  Plaintiff's Title IX Deliberate Indifference and Hostile Environment Claims

Plaintiff has also asserted claims under Title IX for damages resulting from what she contends was Defendant's alleged indifference to her report of the sexual assault.  *See* SAC at Counts V and VII.  In *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998), the Supreme Court held that a private litigant may assert a claim for damages under Title IX when "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [federal funding] recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond."  The Court further determined that the federal funding recipient's "response must amount to deliberate indifference to discrimination."  *Gebser*, 524 U.S. at 290.

One year later, the Supreme Court again addressed the contours of a school's potential liability under Title IX in *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999).  In *Davis*, the Court described its earlier holding in *Gebser* as follows:

> By employing the "deliberate indifference" theory already used to establish municipal liability under [42 U.S.C. § 1983] . . . we concluded in *Gebser* that recipients could be liable in damages only where their own deliberate indifference effectively "caused" the discrimination . . . .  The high standard imposed in *Gebser* sought to eliminate any "risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions."

*Davis*, 526 U.S. at 642–43 (quoting *Gebser*) (internal citations and alterations omitted).  The Court went on to explain that, based on the language of Title IX, a defendant "may not be liable

for damages unless its deliberate indifference 'subjects' its students to harassment. That is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Id.* at 644–45 (internal quotation marks and alterations omitted). "Moreover, because the harassment must occur 'under' 'the operations of' a funding recipient, . . . the harassment must take place in a context subject to the school district's control." *Id.* at 645 (quoting 20 U.S.C. § 1681(a); § 1687). As the Supreme Court further explained in *Davis*: "These factors combine to limit a [federal funding] recipient's damages liability to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs. Only then can the recipient be said to 'expose' its students to harassment or 'cause' them to undergo it 'under' the recipient's programs." *Id. See also Yan Yan v. Penn State Univ.*, 529 F. App'x 167, 171 (3d Cir. 2013) (applying causation requirement to hostile education environment claim under Title IX); *Doe v. Manor Coll.*, Civ. A. No. 18-5309, 2020 WL 4756599, at *12–13 (E.D. Pa. Aug. 17, 2020) (applying causation requirement to Title IX claim for discrimination on the basis of deliberate indifference). "This causation element results in a requirement that harassment, or the likelihood or vulnerability of a student to be subjected to it, must occur subsequent to an official's decision not to remedy a known violation." *Swanger v. Warrior Run Sch. Dist.*, 346 F. Supp. 3d 689, 705 (M.D. Pa. 2018).

      Here, Plaintiff's Second Amended Complaint has not alleged sufficient factual matter to satisfy this causation requirement with respect to her deliberate indifference and hostile education environment claims under Title IX. Plaintiff primarily relies on *Goodwin v. Pennridge Sch. Dist.*, 309 F. Supp. 3d 367 (E.D. Pa. 2018) for support, but the facts of that case only highlight the lack of any harassment specifically caused by the alleged actions or inactions of the school in this case. According to Plaintiff's counsel's own summary of *Goodwin*, "the Plaintiff

alleged that she had been the victim of an off-campus rape," and thereafter, "was subjected to bullying by her attacker and his friends," which the defendant school district allowed to occur by failing to prevent the plaintiff from "remain[ing] in close proximity to students who bullied her as a result of the rape."  Pl.'s Resp. at 8–9 (citing *Goodwin*, 309 F. Supp. 3d at 371–72).  More specifically, after the *Goodwin* plaintiff reported to school administrators that she had been raped, the school still allowed her to be subjected to the following acts of harassment: she was sent "screen shots of text messages showing that [her attacker] and his friends intended to physically harm her" because, according to those messages, she "need[ed] to learn her place"; she was "confronted" by her attacker "in the hallway during school hours using expletives and gender-specific language"; on "the one-year anniversary of [her] rape, [her attacker] sent her a harassing text message," which at least one school administrator "agreed [] was a harassing text," but the school still "took no action"; she was "shoved [] in the hallway" by one of her attacker's friends; and, more generally, was "subjected to verbal and physical harassment nearly every day during her junior year" of high school.  *Goodwin*, 309 F. Supp. 3d at 372–73 (internal quotation marks omitted).  In addition, she was "consistently put in close proximity with [her attacker and his friends] during study halls, lunch, and assemblies."  *Id.* at 373.  The friends of her attacker "were never removed from [her] lunch period, and sat two tables away from her," causing her to "often retreat to the library rather than stay near them, which isolated her from her peers."  *Id.*  Despite the fact that the plaintiff "regularly reported [the] behavior" of her attacker and his friends to school officials, those "officials rarely intervened and, when they did, their actions did not end the harassment."  *Id.*

Plaintiff also relies on a case from the Western District of Virginia, *Butters v. James Madison Univ.*, 145 F. Supp. 3d 610 (W.D. Va. 2015).  In that case, the plaintiff alleged that she

8

had been sexually assaulted, that the individuals who assaulted her video-recorded the assault, that the video-recording began being circulated around the school—which she complained of to school officials, but that the school "did nothing to investigate the assault or to halt the distribution of the video." *Butters*, 145 F. Supp. 3d at 620.  Consequently, "dissemination of the video continued unchecked," and the plaintiff began to receive and experience "negative interactions, comments[,] and pressure . . . from her peers who had seen the video or were otherwise aware of the assault." *Id.* at 614 (internal quotation marks omitted).  It was these subsequent acts of harassment—which the school permitted to occur through its own inaction—that the court relied on in finding Title IX's "causation" requirement satisfied in that case. *See id.* at 621 ("[plaintiff] alleges that she continued to be harassed through the continued dissemination of the video, and by fellow students repeatedly and frequently asking her about it and speaking with her about it").  The court concluded that the school's "failure to take any action to stop the spread of the video, even a step as simple as asking that the original owner not distribute it further, could plausibly constitute deliberate indifference that made [the plaintiff] vulnerable to additional harassment." *Id.*

Unlike in *Goodwin* and *Butters*, Plaintiff here has not plausibly alleged that deliberate indifference on the part of West Chester caused her to be subjected to additional acts of harassment after the alleged assault.  Plaintiff's only allegations that could even possibly be construed as subsequent acts of harassment by Bowman are that Plaintiff once saw Bowman on campus "even though the University had assured [Plaintiff] its scheduling policy would keep the two students separate" (SAC at ¶ 108)[1], and that, after Plaintiff transferred to a different school,

---

[1] The Second Amended Complaint does not allege whether this was due to a scheduling error on Defendant's part, or if Bowman was in that particular area of the school in violation of the scheduling policy that had been instituted.

9

Bowman once sent her a text message stating "who's [sic] number is this," and twice called her after midnight (SAC at ¶¶ 196–99).[2] While Plaintiff was apparently dissatisfied with the specific measures taken by Defendant to keep her separated from Bowman on campus, Plaintiff acknowledges that Defendant did in fact make efforts to keep them separated—efforts which were evidently largely successful since Plaintiff only saw Bowman once after the alleged assault. Accordingly, Plaintiff has not alleged the requisite sort of deliberate indifference as exhibited in *Goodwin*, for instance, where the defendant's continued failure to separate the plaintiff from her attacker and his friends subjected her to further physical and verbal abuse. And as discussed above, federal funding recipients are exposed to damages liability under Title IX only in circumstances "wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." *Davis*, 526 U.S. at 645. Plaintiff does not explain how subjecting Defendant to liability based on the fact that Bowman once texted and twice called her, outside of school hours, after she had already transferred schools, could possibly be considered harassment "tak[ing] place in a context subject to the school['s] [] control." *Id. See also Park v. Secolsky*, 787 F. App'x 900, 905 (7th Cir. 2019) (finding causation requirement not satisfied for Title IX claim because after plaintiff "reported [the] misconduct to [the school], the only harassment she experienced was during her employment at [the alleged harasser's] company, outside of [the school's] purview").

However, Plaintiff has also alleged that the "University itself harassed [Plaintiff] by publicizing her sexual history" in that its investigative report "include[d] more than 100 [] pages

---

[2] The Second Amended Complaint alleges that Bowman called Plaintiff once on January 14, 2020, and "again called [Plaintiff] from a restricted number" six days later. SAC at ¶¶ 198–99. It does not indicate how Plaintiff knew that it was in fact Bowman calling from the restricted number.

of text messages taken from [Plaintiff's] phone, dating as far back as" over a year before the assault at issue "for the sole purpose of setting forth [Plaintiff's] sexual history with third [] parties and Bowman, and embarrassing" Plaintiff.  SAC at ¶¶ 165, 252 (emphasis omitted).  Yet the Second Amended Complaint contains no factual content regarding how this information was purportedly "publicized" by Defendant, or whether Plaintiff was subjected to further acts of harassment as a result.  Therefore, the current construction of this allegation does not change the fact that Plaintiff has not plausibly alleged sufficient factual content establishing that Defendant caused her to be subjected to harassment; but the Court finds it appropriate to grant Plaintiff leave to replead this claim to include such factual content if she so chooses, and is so able.

### C. Plaintiff's Title IX Retaliation Claim

Plaintiff has also alleged a Title IX retaliation claim against Defendant.  *See* SAC at Count VI.  "To establish a prima facie case of retaliation under Title IX, a plaintiff must show that: (1) she engaged in activity protected by Title IX; (2) she suffered an adverse action; and (3) there was a causal connection between the two."  *Doe v. Manor Coll.*, Civ. A. No. 18-5309, 2020 WL 4756599, at *13 (E.D. Pa. Aug. 17, 2020) (citing *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 564 (3d Cir. 2017)).  Defendant does not contest the applicability of the first two prongs of this standard, as "Plaintiff filed a Title IX complaint and, therefore, engaged in protected activity," and thereafter, "West Chester filed Dishonesty charges against Plaintiff."  Def.'s Mot. at 18.

Defendant argues that Plaintiff cannot satisfy the third prong because "the [dishonesty] charges were [filed] because West Chester did not believe her claims—not because she filed them."  *Id.*  However, the Court finds that Plaintiff has alleged a plausible causal connection between the two events under the circumstances alleged here, particularly given Plaintiff's

11

allegation that Defendant was aware that Bowman had confessed to having assaulted Plaintiff. *See* SAC at ¶¶ 58–74, 90–96. Defendant's only other argument is that its decision to file charges against Plaintiff "was not based on Plaintiff's gender but on the evidence West Chester obtained and reviewed." Def.'s Mot. at 18. But, as Plaintiff points out, this argument is simply inconsistent with the clear state of the law on this issue. *See, e.g.*, *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d at 563–64 ("When a funding recipient retaliates against a person . . . because she complains of sex discrimination, that's intentional discrimination based on sex, violative of Title IX.") (internal quotation marks omitted). Accordingly, Defendant's Motion to Dismiss Count VI of Plaintiff's Second Amended Complaint will be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be granted with respect to Counts I, II, III, and IV of Plaintiff's Second Amended Complaint, and the claims set forth in those counts will be dismissed with prejudice; Defendant's Motion will be granted with respect to Counts V and VII of Plaintiff's Second Amended Complaint, and the claims set forth in those counts will be dismissed without prejudice to Plaintiff's ability to further amend her complaint as to those claims; and Defendant's Motion will be denied with respect to Count VI of Plaintiff's Second Amended Complaint.

An appropriate order follows.

BY THE COURT:

/s/ C. Darnell Jones, II
C. Darnell Jones, II    J.